Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

ATTORNEY FOR BVS CONSTRUCTION, INC.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| BVS CONSTRUCTION, INC | § | CASE NO. 19-60004-11 |
| | § | |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF BVS CONSTRUCTION, INC.
PURSUANT TO SECTION 1125
OF THE BANKRUPTCY CODE DATED JULY 31, 2019**

**TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE
HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, BVS Construction, Inc. ("BVS"), Debtor and Debtor-in-Possession in the above-referenced bankruptcy case, and propose the following Plan of Reorganization ("Plan"). The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtor into 11 separate classes.

## ARTICLE I

**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 365 and/or 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.    "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this Case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.  When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.    "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.    "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this Case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.    "**Bar Date**" shall mean May 6, 2019 as the date fixed by the Court as the last date for filing all Claims in this Case other than Administrative and Priority Claims or Rejection Claims.

6.    "**Case**" shall mean the above-styled Chapter 11 case.

7.    "**Claim**" shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off.  Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.    "**Claimant**" shall mean the holder of a Claim.

9.    "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.     "**Code**" shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11.     "**Confirmation**" or "**Confirmation of this Plan**" shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.     "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming this Plan.

13.     "**Court**" shall mean the United States Bankruptcy Court for the Western District of Texas, Waco  Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     "**Creditor**" shall mean any person having a Claim against Debtor.

15.     "**Debt**" shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.     "**Debtor**" shall mean BVS Construction, Inc., the Debtor in the above-styled and numbered Case.

17.     "**Disbursing Agent**" shall mean the Reorganized Debtor.

18.     "**Effective Date**" shall mean thirty days after the Final Confirmation Date.

19.     "**Entity**" shall include Person, estate trust, governmental unit and the United States Trustee.

20.     "**Equity Interest Holders**" shall mean holders of any equity interests in the Debtors.

21.     "**Final Confirmation**" shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22.     "**Order Confirming Plan**" shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23.     "**Petition Date**" shall mean the date on which the Debtor filed this proceeding, January 1, 2019.

24.     "**Plan**" shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25.     "**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtors post-petition in the ordinary course of business.

26.     "**Rejection Claim**" shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.     "**Reorganized Debtor**" shall mean the entity or person which shall assume title to and control of the Debtor's assets and liabilities upon confirmation as provided herein.

28.     "**Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.     "**Substantial Consummation**" shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30.     "**Tax Claims**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the Claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31.     "**Unsecured Claim**" shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

<u>**ARTICLE 2**</u>
<u>**CERTAIN GENERAL TERMS AND CONDITIONS**</u>

The following general terms and conditions apply to this Plan:

2.1     <u>**Claims and Debts**</u>:  Various types of Claims and Debts are defined in this Plan. This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan.  Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2     <u>**Securities Laws**</u>:  The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3     <u>**Time for Filing Claims**</u>:  With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants <u>must</u> file a proof of claim bearing the one or more of the number of the above-styled and referenced proceedings with the United States Bankruptcy Court for the Western District of Texas, Waco Division, on or before the Bar Date to participate under this Plan.  Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan.  Claims arising from rejection of a lease or executory contract and

administrative claims shall be filed with the Court within sixty (60) days following the Confirmation Date of this Plan.

2.4 **Modifications to Plan**: In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1 All trade and service debts and obligations, including ad valorem taxes for year 2020, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2 Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4
## DIVISION OF CREDITORS INTO CLASSES

4.1 Classification of Claims: This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof.

4.2 **Class 1**: Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees (**Not Impaired)

4.3 **Class 2**: Consists of **Allowed Ad Valorem Tax Claims** (Impaired)

4.4 **Class 3**: Consists of **Allowed Claims of the Texas Comptroller** (Impaired)

4.5 **Class 4**: Consists of **Allowed Priority Claims of the Internal Revenue Service** (Impaired)

4.6 **Class 5**: Consists of **Allowed Secured Claims of the Internal Revenue Service** (Impaired)

4.7 **Class 6**: Consists of **Allowed Secured Claims of Commercial Credit Corporation** (Impaired)

4.8 **Class 7**: Consists of **Allowed Secured Claims First State Bank of Bedias** (Impaired)

4.9 **Class 8**: Consists of **Allowed Secured Claims of Prosperity Bank** (Impaired)

4.10 **Class 9**: Consists of **Allowed Secured Claims of Numo Remanufacturing Company and/or Vanguard Truck Centers** (Impaired).

4.11 **Class 10**: Consists of **Allowed Unsecured Creditors** (Impaired)

4.12 **Class 11**: Consists of **Allowed Equity Interest Holder Claims** (Impaired)

**ARTICLE 5**
**TREATMENT OF CLASSES**

5.1     **Satisfaction of Claims and Debts**:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full satisfaction of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein.  On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

5.2     **Class 1 Claimants (Allowed Administrative Claims of Professionals and U.S. Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of the Plan. Professional fees are subject to approval by the Court as reasonable. Debtors attorney's fees approved by the Court and payable to the law firm of  Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of the Plan not to exceed the amount of $50,000 including Section 1930 fees.  Section 1930 fees shall be paid in full prior to the Effective Date.  The Debtors is required to continue to make quarterly payments to the U.S. Trustee and shall be required to file post-confirmation operating reports until these Cases are closed, converted or dismissed.  The Class 1 Claimants are not impaired under the Plan.

5.3     **Class 2 Claimants (Allowed Ad Valorem Tax Claims)** are impaired and shall be satisfied as follows: Brazos County has filed a Proof of Claim for unpaid business property taxes for tax years 2010 through 2018 in the amount of $500,950.06 against BVS. BVS, disputes this amount. Any Allowed Claims of the Ad Valorem Tax creditors, shall be treated as secured Claims.  The Ad Valorem Taxes will receive post-petition pre-Effective Date interest at the state statutory rate of 12% per annum and post-Effective Date interest at the rate of 12% per annum. The Debtors will pay the Ad Valorem Taxes in sixty (60) equal monthly payments commencing on the Effective Date with interest at the rate of 12% per annum. The monthly payment will be approximately $11,143 if the Claim is allowed as filed. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Tax Claims until paid in full as called for by the Plan.

Class 2 Claimants are impaired under the Plan

5.3     **Class 3 Claimants (Allowed Claims of the Texas Comptroller)**  are impaired and shall be satisfied as follows: the Texas Comptroller has filed two Proofs of Claim. One Proof of Claim asserts a priority claim for Sales and Use Taxes in the amount of $37,440.02. The other Proof of Claim asserts a claim for  Franchise Tax in the amount of $5,282.06. The Debtor shall pay the Comptroller Proof of Claims in full with interest at the rate of 6.5% per annum in  60 equal monthly payments commencing on the Effective Date.  The Debtor believes if the claims are allowed as filled,  the combined monthly payment amount on the Comptroller's Tax Claim will be $836.

A failure by the Reorganized Debtor to make a payment to the Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the  Comptroller  then the Comptroller  may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the  Comptroller may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.  The Reorganized

Debtor shall have the opportunity to cure two (2) times over the life of the plan. In the event of the third default, the Comptroller may proceed with the state law remedies for collection of all amounts due under state law.

Class 3 Claimants are impaired under this Plan.

5.5 **Class 4 Claimants (Allowed Priority Claims of the Internal Revenue Service)** are impaired and shall be satisfied as follows: The IRS has filed a Proof of Claim asserting a Priority Claim in the amount of $306,391.95 for 941 taxes against Debtor BVS. The Debtor shall pay the IRS Priority Claim in sixty (60) equal monthly payments commencing on the Effective Date with interest at the rate of 5% per annum. In the event the IRS Priority Claim is allowed as filed, the monthly payment on the IRS Priority Claim shall be approximately $5,782.

Class 4 creditor is impaired under the Plan.

5.6 **Class 5 Claimants (Allowed Secured Claims of the Internal Revenue Service)** are impaired and shall be satisfied as follows: The Internal Revenue Service has filed a Proof of Claim against Debtor asserting a Secured Claim in the amount of $1,376,732.88 for 941 taxes. The Debtor shall pay the IRS Secured Claim in one hundred twenty (120) equal monthly payments commencing on the Effective Date with interest at the rate of 5% per annum. In the event the IRS Secured Claim is allowed as filed, the monthly payment on the IRS Secured Claim shall be approximately $14,602. The IRS shall retain its liens against the property of the Debtor, but shall release its liens, if any, when paid in full as called for by the Plan.

The Class 5 creditor is impaired under the Plan.

SECTIONS APPLICABLE TO CLASS 4 and 5 Claimants.

a. **Events of Default.** The occurrence of any of the following shall constitute an event of default under the Plan as to Class 4 and 5 Claimants:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt.

2) **Failure to Perform Continuing Obligations**. If the Debtor or its successor in interest fail to make deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the IRS within (ten) 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest fail to file any required federal or state tax return by the due date of such return,

Upon an event of default, the IRS shall send the Debtor notice of default and if the default is not cured within fourteen (14) days of such demand, then the United States may declare that the Debtor are in default of the Plan, and the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. Notwithstanding the foregoing, the IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute

expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: IRS, Attn: Keri Templeton, 300 E. 8th Street, M/S 5026 AUS, Austin, Texas 78701. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor are in default. If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or its successor in interest.

If BVS fails to confirm a plan or defaults in their confirmed plan payments as per the default language in the confirmed plan, then the IRS will accelerate its allowed claims past and future and declare the outstanding amounts of the trust fund taxes assessed against the Debtor to be immediately due and owing and pursue any and all available state and federal rights and remedies.

The IRS shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The IRS may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the IRS; but the IRS shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

5.7  **Class 6 Claimant (Allowed Secured Claim of Commercial Credit Group)** is impaired and shall be satisfied as follows: The Debtor executed the following promissory notes, security agreements and related documents ("Loan Documents") in favor of Commercial Credit Corporation ("CCG"):

Promissory Note and Security Agreement dated February 27, 2018 in the original amount of $1,393,446;

Promissory Note and Security Agreement dated May 30, 2018 in the original amount of $620,400;

Promissory Note and Security Agreement dated October 3, 2018 in the original amount of $1,193,920; and

Promissory Note and Security Agreement dated October 3, 2018 in the original amount of $522,300.

CCG has properly perfected its security interest in the specific titled and untitled equipment identified in each of the respective Loan Documents, as well as a blanket security interest in all accounts, accounts receivable, chattel paper, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, deposit accounts, investment property, and all other property, of whatever nature and kind, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all attachments, accessories, substitutions, replacements, replacement parts, additions, software and software upgrades and all cash and non-cash proceeds of and to all of the foregoing (collectively referred to hereinafter as the "CCG Collateral").

On or about March 8, 2019, the Court entered that certain Amended Agreed Final Order Regarding Debtor's Use of Cash Collateral [Docket #40]. ("Agreed Order"). Pursuant to the terms of the Agreed Order and the Proof of Claim filed by CCG, CCG shall have an Allowed Secured Claim in the amount of $2,900,875.46 less any amount paid to CCG post petition. The CCG Allowed Secured Claim shall be paid in 36 equal monthly payments with interest at the rate of 5% per annum making the monthly payment $86,942.

CCG shall retain its liens on the CCG Collateral until paid in full in accordance with the terms of the Plan.

Class 6 creditor is impaired under the Plan.

5.8 **Class 7 Claimant (Allowed Secured Claims of First State Bank of Bedias)** are impaired and shall be satisfied as follows: On or about December 9, 2011, the Debtor executed that certain Promissory Note in the original principal amount of $76,500 in favor of First State Bank of Bedias ("Bedias Note"). The Bedias Note was secured by a Security Agreement executed on December 9, 2011 which provided Bedias a security interest in among other things that certain 1996 Rexcon Logo 5 yard concrete batch plant s/n 1946 with water pump and radial stackers, Mclaulgin Mighty mole hydraulic Portable Boring Machine s/n 4854001180711 and that 1999 Vermeer D16X20A Crawler Directional Drill s/n 1VFT170S6X100173 ("Bedias Collateral"). As of the Petition Date the amount owed on the Bedias Note was $4,942.23. Debtor shall pay the Bedias Note Claim in full in 36 equal monthly payments with interest at the rate of 5% per annum commencing on the Effective Date. The monthly payments shall be $150.44. Bedias shall retain its lien on the Bedias Collateral until paid in full under the Plan.

The Class 7 creditor is impaired under the Plan.

5.9 **Class 8 Claimant (Allowed Secured Claims of Prosperity Bank)** are impaired as shall be satisfied as follows: in the original BVS bankruptcy case, the Prosperity Bank had an allowed secured claim in the amount of approximately $1,812,472. This claim was a consolidation of five (5) Promissory Notes and related security agreements on both real and personal property including that certain 507.68 acres of land in Milan County, Texas, more fully described in the Deed of Trust ("Prosperity Tract #1"), that certain Deed of Trust concerning 2.17 acres in Brazos County, Texas, more fully described in the Deed of Trust ("Prosperity Tract #2"), and that certain property located at 8566 McAllester Lane, College Station, Texas, as more fully described in the Deed of Trust ("Prosperity Tract #3"). Prosperity also maintained a lien on all Debtor's accounts receivable and general intangibles. The Prosperity Tract # 1, Prosperity Tract #2, Prosperity Tract #3 and security interests maintained by Prosperity on assets of BVS are collectively referred to as the "Prosperity Collateral". Prosperity filed a Secured Proof of Claim asserting a claim of $1,333,695.84. The Debtor disputed this amount. The Allowed Secured Claim of Prosperity shall be paid in eighty-four (84) equal monthly payments with interest at the rate of 5% per annum commencing on the Effective Date. Based upon the Proof of Claim filed by Prosperity, if allowed, the amount of the monthly payment will be $18,847.21. Prosperity shall retain its liens on the Prosperity Collateral described above until paid in full under the Plan. For the avoidance of doubt, upon confirmation of this Plan, all Prosperity Collateral shall belong to BVS regardless of the current title holder of the Prosperity Collateral.

The Class 8 claimant is impaired under the Plan.

5.10 **Class 9 Claimants (Allowed Claims of Numo Remanufacturing Company and Vanguard Truck Centers)** are impaired and shall be satisfied as follows: Prior to the Petition Date, the Debtor had certain property at Numo Remanufacturing Company ("Numo"). The property was held by Numo for certain repairs. A dispute arose between Numo and the

Debtor concerning the repairs. After the Petition Date, the Debtor filed a Motion with the Court to Compel Numo to return the property to the Debtor. Numo objected to the return of the property. On or about April 18, 2019 the Court entered an Agreed Order between Numo and Debtor. [Docket #60]. ("Agreed Order"). Pursuant to the terms of the Agreed Order, Numo may assert an Administrative Claim for $7,500 and a secured claim in the amount of $25,496. The Debtor reserves the right to object to any such claim. In the event Numo has an Administrative Claim that claim shall be paid in accordance with the Class 1 claimants. In the event, Numo has a secured claim, the secured claim shall be paid in full with interest at the rate of 5% per annum in sixty (60) equal monthly payments commencing on the later of the Effective Date or 30 days after a final determination of the amount owed Numo on its secured claim. To the extent Numo has a secured claim, Numo shall retain its lien on the collateral described in the Agreed Order, until the secured claim is paid in full in accordance with the terms of this Plan.

Prior to the Petition Date, the Debtor had certain property at Vanguard Truck Centers ("Vanguard"). The property was held by Vanguard for certain repairs. A dispute arose between Vanguard and the Debtor concerning the repairs. After the Petition Date, the Debtor filed a Motion with the Court to Compel Vanguard to return the property to the Debtor. Vanguard objected to the return of the property. On or about ___, 2019 the Court entered an Agreed Order between Vanguard and Debtor. [Docket #__]. ("Agreed Order"). Pursuant to the terms of the Agreed Order, Vanguard may assert a secured claim in the amount of $28,474.75. The Debtor reserves the right to object to any such claim. In the event Vanguard has a secured claim, the secured claim shall be paid in full with interest at the rate of 5% per annum in sixty (60) equal monthly payments commencing on the later of the Effective Date or 30 days after a final determination of the amount owed Vanguard on its secured claim. To the extent Vanguard has a secured claim, Vanguard shall retain its lien on the collateral described in the Agreed Order, until the secured claim is paid in full in accordance with the terms of this Plan.

The Class 9 claimants are impaired under this Plan.

5.11    **Class 10 Claimants (General Unsecured Creditors of Debtor)** are impaired and shall be satisfied as follows: General Unsecured shall share pro rata in the Unsecured Creditors' Pool. BVS shall make 60 monthly payments commencing on the Effective Date of $5,000.00 each into the Unsecured Creditors' Pool.

The Class 10 creditors are impaired.

5.12    **Class 11 Interests (Current Ownership)** may be impaired and shall be satisfied as follows: The Allowed Equity Interest Holder Claims shall retain their stock in the Reorganized Debtor, however, in the event that the unsecured creditors in Class 10 do not vote to accept the Plan, and the stock ownership of BVS, an auction for the stock ownership shall be conducted. The auction will take place on first business day that is five days after the Confirmation Order has been entered. The auction will take place at the offices of counsel for the Debtor, Eric A Liepins, P.C. 12770 Coit Road, Suite 1100, Dallas, Texas 75251 beginning at 10:00 a.m. Any party wishing to bid must be present. The auction will be a cash auction. No credit bidding will be allowed. The winner of the auction must present good funds to be deposited into the Debtor in Possession account at the close of the auction. If an auction is necessary, the old stock certificates in BVS will be cancelled and new stock certificates in BVS will be issued at the time of the auction to the winning bidder. Any party wishing to bid at the auction will be responsible for fulfilling the terms of the Plan, included undertaking the liability as a responsible party for all IRS liability dealt with under this Plan.

Class 11 Claimants may be impaired under the Plan.


# ARTICLE 6
## MEANS FOR EXECUTION OF THE PLAN

6.1     **Action to be taken:** Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

6.2     **Ongoing Operations:** The Debtor's obligations under this Plan will be satisfied out of the ongoing operations of the Reorganized Debtor.

6.3     Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.


# ARTICLE 7
## SECTION 1129(b)(2)

7.1     The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of Claims or interests are set forth in Section 1129(b) of the Code.  Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.


# ARTICLE 8
## STATUS OF EXECUTORY CONTRACTS

8.1     All unexpired leases and executory contracts shall be assumed on or before the Effective Date.  To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan prior to the Effective Date, they are rejected.


# ARTICLE 9
## EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

9.2     Default shall occur if one scheduled Plan payment is not made by Debtor or if post-petition taxes are not timely paid pursuant to state law.

9.3     Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fail to cure any default as provided herein.  In the event that the holder of an Allowed Claim asserts that a default under the Plan has occurred, such creditor must provide the Reorganized Debtor with written notice

["Notice"] of such default to the following address: PO Box 985, Bryan, Texas 77806 via certified mail, overnight mail or receipted delivery. If the default asserted in the Notice remains uncured on the thirtieth [30th] day from the date on which such Notice is sent, the holder of such Allowed Claim may pursue any rights or remedies it may have under applicable nonbankruptcy law, whether state, federal or otherwise.

9.4.    Notwisthstanding Section 9.3, any Notice sent by an ad valorem taxing authorities under the Plan may be sent via facsimile to Ricky Palasota at 979-846-3136. In the event the default of payment to the ad valorem taxing authorities is not cured within twenty (20) days of the date of the Notice, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two Notices. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court.

## ARTICLE 10
## DISCHARGE

10.1    Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2    The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

10.3    As of the Effective Date, except as provided in the Plan or the Confirmation Order, all holders of Claims against the Debtor shall be precluded from asserting against the Debtor, as reorganized, or their respective successors or property, any other of further Claims, debts, rights, causes of action, liabilities based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

10.4    The Confirmation Order shall contain such injunctions as may be necessary and helpful to effectuate the discharge of the Debtor provided herein. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SUCH INJUNCTION SHALL INCLUDE AN ABSOLUTE PROHIBITION FROM (I) COLLECTING CLAIMS AGAINST THE DEBTOR IN ANY MANNER OTHER THAN AS PROVIDED FOR IN THE PLAN. AND (II) COLLECTING ANY DISALLOWED CLAIM FROM ANY GUARANTOR, PARTNER, OFFICER, MANAGER OR MEMBER OF THE DEBTOR THAT OTHERWISE WOULD BE LIABLE TO SUCH HOLDER FOR PAYMENT OF SUCH DISALLOWED CLAIM. NOTWITHSTANDING ANY OTHER PROVISIONS IN THIS  PLAN, NOTHING IN THIS PLAN SHALL CONSTITUTE OR PROVIDE FOR AN INJUNCTION, EITHER TEMPORARY OR PERMANENT, AGAINST ANY HOLDER OF A CLAIM FROM COMMENCING OR CONTINUING ANY ACTION OR PROCEEDING AGAINST ANY GUARANTOR, PARTNER, OFFICER, DIRECTOR, CO-OBLIGOR, MANAGER OR MEMBER OF THE DEBTORS THAT IS OTHERWISE LIABLE TO SUCH HOLDER FOR PAYMENT OF SUCH CLAIM.

## ARTICLE 11
## AMENDMENTS TO THE PLAN

11.1    Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122, 1123 and 1127 of Title 11. The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2    In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the Cases may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

## ARTICLE 12
## EFFECT OF CONFIRMATION

12.1    The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2    All real and personal property dealt with under this Plan including but not limited to all causes of action of the Debtor, and any avoidance actions of the Debtor, under applicable non bankruptcy law or the Bankruptcy Code, shall vest in BVS.

12.3    All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to Claims, secured Claims or secured debts and interests specifically granted in this Plan.

12.4    All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

13.2    Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtor against any Entity.

13.3    Any caption herein is for convenience only and does not affect the construction of the Plan.

13.4    Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

Until this Case is closed, the Court retains jurisdiction of the following matters only:

14.1    To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

14.2    To allow or disallow Claims.

14.3    To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in a Debtor's estate and to consummate rejection and termination thereof in connection with a Debtor's estate and/or implementation of the Plan.

14.4    To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5    To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

14.6    To recover all assets and properties, including by lawsuit, of a Debtor's estate wherever located.

14.7    To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8    To hear and determine any action or proceeding brought by a Debtor or a Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9    To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

14.10    To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

14.11    To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

14.12    To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13    To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14   To enter an order closing this case. The Debtor shall attempt to close the case within 6 months of the Effective Date.

Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any ad valorem tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

Respectfully submitted,

BVS Construction, Inc.

/s/ Ricky Joe Palasota
By: Ricky Joe Palasota
Its: President

ERIC LIEPINS
ERIC LIEPINS, P.C.
12770 Coit Road, Suite 1100
Dallas, Texas 75251
(972)991-5591
FAX: (972) 991-5788

COUNSEL FOR BVS CONSTRUCTION, INC.