

**Signed March 20, 2020.**

_____
Ronald B. King
Chief United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BVS CONSTRUCTION, INC., | § | CASE NO. 19-60004-RBK |
| | § | |
| DEBTOR | § | CHAPTER 11 |

## OPINION

The issue in this case is whether post-petition penalties incurred by a chapter 11 debtor as a result of workplace safety violations are allowable as administrative expenses under 11 U.S.C. § 503(b). BVS Construction, Inc. (the "Debtor") filed a voluntary chapter 11 petition on November 11, 2014. The Debtor filed a second voluntary chapter 11 petition on January 2, 2019; therefore, the Debtor is a "chapter 22" filer. Since the date of filing the second chapter 11 petition, the Debtor has been cited for 18 workplace safety violations by the Mine Safety and Health Administration ("MSHA") and has incurred a total of $34,676.58 in fines in connection with the Debtor's mining operations in Brazos County, Texas.

MSHA filed a motion to allow administrative expenses under 11 U.S.C. § 503(b), to compel payment of the post-petition penalties. At the hearing, the Debtor cited case law from Delaware and the Court of Appeals for the Third Circuit to support its assertion that the penalties are not allowable as administrative expenses under § 503(b)(1)(A).

The Court finds that MSHA has met the requirements for administrative expenses under § 503(b). Case law cited by the Debtor, which bars criminal penalties from treatment as an administrative expense, is inapposite in this case because the post-petition penalties incurred by the Debtor are not criminal penalties. The Court finds that the post-petition penalties imposed against the Debtor are civil in character and are therefore allowable as administrative expenses.

## JURISDICTION AND VENUE

The Court finds that it has jurisdiction to render a final order in this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to FED. R. BANKR. P. 7052 and 9014.

## BACKGROUND

The Debtor filed its second voluntary petition for chapter 11 bankruptcy on January 2, 2019. The Debtor has continued to operate its business as a debtor-in-possession during the pendency of this bankruptcy. As part of its ordinary business, the Debtor maintains a mining operation in Brazos County, Texas.

MSHA is a component of the Department of Labor and is responsible for developing and enforcing workplace safety regulations for mine operations across the country under the Mine Safety and Health Act of 1977. *See* 30 U.S.C. §§ 801–820. MSHA exercises regulatory authority

over the Debtor's mining operations at the Palasota Mine in Brazos County. The Debtor has been issued citations for MSHA violations dating back to January 2012. Since the petition date, the Debtor has been cited for 18 workplace safety violations and has incurred a total of $34,676.58 in fines for those violations.

In its response to MSHA's motion, the Debtor acknowledged that these penalties are not contested, but argued that the penalties are not allowable as administrative expenses. The Debtor cited two recent opinions from Delaware and the Third Circuit to support its assertion that these penalties are not allowable as administrative expenses under § 503(b)(1)(A). *See* **Pa. Dep't of Envtl. Res. v. Tri-State Clinical Labs., Inc.**, 178 F.3d 685 (3d Cir. 1999); **In re Exide Techs.**, 601 B.R. 271 (Bankr. D. Del. 2019) (Carey, J.).

## DISCUSSION

Section 503(b) of the Bankruptcy Code states that, after notice and a hearing, "there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To make a prima facie case for allowance of an administrative expense, the movant is required to meet a two-pronged test by showing (1) that the claim arises from a transaction with the debtor's estate; and (2) that it has directly and substantially benefitted the estate. **McBride v. Riley (In re Riley)**, 923 F.3d 433, 439 (5th Cir. 2019).

Generally, liabilities incurred by a bankruptcy estate for post-petition operations constitute "actual and necessary" costs. **Al Copeland Enters. v. Texas (In re Al Copeland Enters.)**, 991 F.2d 233, 238–40 (5th Cir. 1993). The first prong of the test for an administrative expense is easily met in this case because the mine was operated by the Debtor during the administrative claim period. MSHA argues that the second element for an administrative

expense is also met because the penalties in this case are ordinary business expenses that constitute "actual and necessary costs" under § 503(b). Even though post-petition penalties relating to workplace safety violations do not benefit the bankruptcy estate in a traditional sense, MSHA argues that the penalties are a direct "benefit to the estate" because they are costs incident to the Debtor's business operation.

In *Reading Co. v. Brown*, the Supreme Court held that consideration of "fundamental fairness and logic" sometimes requires the allowance of a claim of administrative priority, and that "actual and necessary" costs should include "costs ordinarily incident to operation of a business." **Reading Co. v. Brown**, 391 U.S. 471, 483 (1968). Multiple court of appeals cases also support the proposition that post-petition civil fines and penalties are simply part of the cost of doing business and are allowed as an administrative expense. *See* **Cumberland Farms, Inc. v. Fla. Dep't of Envtl. Prot.**, 116 F.3d 16 (1st Cir. 1997); **Ala. Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining Co.)**, 963 F.2d 1449 (11th Cir. 1992); **U.S. Dep't of Interior v. Elliott (In re Elkins Energy Corp.)**, 761 F.2d 168 (4th Cir. 1985). Payment of *civil* fines and penalties are generally part of the cost of doing business. So, if the MSHA penalties are civil in character, then the requirements for an administrative expense under § 503(b) have been met because the post-petition MSHA penalties are related to the Debtor's mine which was operated during the pendency of the bankruptcy case.

The Debtor relied heavily on the Delaware case of *Exide Technologies*, which involved post-petition penalties imposed on the chapter 11 debtor-in-possession by the South Coast Air Quality Management District (the "District"), an air pollution agency in southern California. **In re Exide Techs.**, 601 B.R. at 275–76. The debtor in *Exide* manufactured lead-acid batteries, and issues arose due to environmental contamination at the debtor's facility in Vernon, California.

4

*Id.* at 275. The District filed a proof of claim alleging $38,915,000 in fines and penalties in connection with the debtor's operations. *Id.* Violations were for items such as failing to file reports and emission exceedances. *Id.* at 276. The debtor was accused of, and later admitted to, violating numerous provisions under the federal Resource Conservation and Recovery Act and the Hazardous Materials Transportation Act. *Id.* at 278.

In a related state court suit between the debtor and the District which was removed to federal district court, the District argued that the suit should be remanded to California state court because the penalties at issue in the case were "quasi-criminal" in character. *Id.* at 277. The District Court for the Central District of California agreed that the penalties were quasi-criminal in nature and granted the District's motion for remand. *Id.*

Later, in bankruptcy court, the District in *Exide* claimed that the penalties were entitled to administrative expense priority treatment under § 503(b). *Id.* at 284–85. Judge Kevin Carey affirmed the two-prong test for an administrative expense under § 503(b)(1)(A), that "the debt must arise from a transaction with the [estate] . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." *Id.* at 285. To determine whether these penalties qualified, the *Exide* court looked to the Third Circuit's decision in *Tri-State*. *See* **Pa. Dep't of Envtl. Res. v. Tri-State Clinical Labs., Inc.**, 178 F.3d 685 (3d Cir. 1999).

The Third Circuit Court of Appeals in *Tri-State* held that "noncompensatory criminal penalties" resulting from post-petition conduct are not given administrative expense priority because they are not "ordinarily incident to operation of a business." *Id.* at 698 ("We hold that punitive criminal fines arising from post-petition behavior are not administrative expenses under 11 U.S.C. § 503(b), and therefore, are not accorded priority status pursuant to § 507(a)(1)."). The

Delaware bankruptcy court in *Exide*, therefore, had to determine whether the post-petition penalties imposed against the debtor were criminal, civil, or a hybrid (quasi-criminal). The bankruptcy court in *Exide* followed *Tri-State* and ultimately held that the penalties were not entitled to treatment as an administrative expense because, by the District's own argument, the penalties were quasi-criminal in nature. ***In re Exide Techs.***, 601 B.R. at 285 ("To support its efforts for remand of the California State Action, the District emphasized the criminal or 'quasi-criminal' nature of its penalties. Ultimately, the District . . . [persuaded] the federal court that, while the District's penalties are nominally civil, they fulfill the same function as a criminal enforcement action. Now, as Exide points out, the District has changed course and characterizes its penalties as 'civil.' Accordingly, Exide argues that judicial estoppel should apply . . . .").

To distinguish *Exide* and *Tri-State*, MSHA argues that the facts of the present case warrant a different result because this case does not involve criminal or quasi-criminal penalties. Rather, the post-petition MSHA penalties are *civil* in nature. The Court agrees that the post-petition MSHA penalties are civil in nature and that *Exide* and *Tri-State* are inapposite to the present case. *Tri-State* involved a criminal fine. Additionally, while the fines in *Exide* appear to be similar to the MSHA penalties, the *Exide* court treated them as quasi-criminal because the creditor in that case had previously argued that the fines were quasi-criminal in nature; therefore, judicial estoppel applied. Here, MSHA has never argued that the post-petition penalties were criminal or quasi-criminal in nature. Finally, the Court is persuaded by case law interpreting the Mine Safety and Health Act of 1977 (and its statutory predecessor), and by the language of the statute itself, which indicates that the penalties are civil in character.

The Mine Safety and Health Act of 1977 (the "Act") was enacted for the purpose of protecting the health and safety of miners. 30 U.S.C. § 801. The Act establishes "standards . . . to

protect the health and safety of the Nation's coal or other miners," and requires each operator of a mine to comply with such standards. *Id.* If the Secretary of Labor (through his authorized representative) finds violations of the statute, citations are issued to the operator. *Id.* § 814. The Act states that operators in violation "shall be assessed a civil penalty by the Secretary which penalty shall not be more than $50,000 for each such violation." *Id.* § 820(a)(1). Section 820(d) specifically addresses the potential for *criminal* penalties, separate from civil penalties. *Id.* § 820(d). Criminal penalties may be issued against operators who "willfully" or "knowingly" violate MSHA standards, and these penalties are limited to a $250,000 fine or imprisonment for not more than one year. *Id.* The citations issued in this case, however, do not allege that the Debtor violated MSHA health and safety standards "willfully" or "knowingly."

The categorization of MSHA penalties as "civil" in nature, except when they are specifically alleged as criminal penalties under § 820(d), is supported by case law. *See* ***United States v. Finley Coal Co.***, 345 F. Supp. 62 (E.D. Ky. 1972), *aff'd and remanded*, 493 F.2d 285 (6th Cir. 1974), *cert. denied*, 419 U.S. 1089 (1974). The dispute in *Finley Coal* arose from an underground explosion of interconnected mines, resulting in multiple fatalities and charges of multiple violations of the Act's statutory predecessor. *Id.* at 63. The defendant coal company was issued a civil penalty under the statute in the amount of $53,600, similar to the penalties imposed on the Debtor. *Id.* Separately, a federal indictment was returned against the defendant charging 24 counts of MSHA violations. In a motion to dismiss, the defendant argued that "the dual civil and criminal proceedings" constituted double jeopardy in violation of the Fifth Amendment. *Id.* The District Court for the Eastern District of Kentucky held that "the threat of a civil assessment and a criminal penalty" against the defendant under the Coal Mine Health and Safety Act of 1969 did not constitute double jeopardy. *Id.* at 64.

The *Finley Coal* court reasoned that Congress clearly enacted the predecessor statute to establish "comprehensive penalties to be imposed under stated conditions, some of which are civil and remedial in nature and . . . others criminal in nature to be sought only against wilful violators." *Id.* at 65. The citations issued in this case do not involve willful or knowing violations. The *Finley Coal* case, interpreting penalties issued under the predecessor statute, strongly supports the finding that the penalties imposed against the Debtor for MSHA violations are civil in character.

## Conclusion

Because the post-petition MSHA penalties are civil in character, the Court finds that the post-petition penalties constitute (1) a transaction with the estate; and (2) directly benefit the estate because civil penalties are generally part of the cost of doing business. For these reasons, the Court has granted MSHA's motion to allow an administrative expense for the post-petition penalties under § 503(b)(1)(A). A separate order has been entered.

### # #